IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| MEINEKE CAR CARE CENTERS, INC. ) <br> and ECONO LUBE N' TUNE, INC., ) <br> ) <br> Plaintiffs, ) <br> v. ) <br> ) <br> ABOMB RESULTS, LLC, MELISSA ) <br> ORTIZ, and ADAM REICH, ) <br> ) <br> Defendants. ) | CIVIL ACTION NO. <br> _____ <br> <br> **COMPLAINT** |

Plaintiffs, MEINEKE CAR CARE CENTERS, INC. ("Meineke") and ECONO LUBE N' TUNE, INC. ("EconoLube") (together, the "Driven Companies"), together, through their undersigned counsel, hereby sue defendants ABOMB RESULTS, LLC ("Company"), Melissa Ortiz ("Ortiz"), and Adam Reich ("Reich") (together, "Defendants") and allege and say as follows:

## INTRODUCTION

1. The Driven Companies seek to recover $513,000.00 as treble damages due under North Carolina's Deceptive and Unfair Trade Practices Act (the "Act") plus reasonable attorneys' fees as a result of Defendants' fraudulent efforts.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter herein pursuant to 28 U.S.C. §1332 (a) as the parties are citizens of different states and the matter in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs.

3. This Court has jurisdiction over the Defendants because the Driven Companies' claims arise out of promises made and conduct by Defendants to perform services for the Driven Companies located in Charlotte, Mecklenburg County, North Carolina.

4. This Court also has jurisdiction over the Defendants because Defendants caused an economic injury to the Driven Companies after soliciting business, entering into two written agreements, and accepting payments in Charlotte, Mecklenberg County, North Carolina.

## THE PARTIES

*The Driven Companies*

5. Meineke is a North Carolina corporation with its principal place of business located at 128 South Tryon Street, Suite 900, Charlotte, North Carolina.

6. EconoLube is a Delaware corporation with its principal place of business located at 128 South Tryon Street, Suite 900, Charlotte, North Carolina.

*Defendants*

7. Company is a New York limited liability company with its principal place of business located at 832 Charles Pond Drive, Coram, Suffolk County, New York.

8. Ortiz is an individual that is a citizen of Texas residing in Austin, Travis County, Texas.

9. Reich is an individual that is a citizen of New York residing in Coram, Suffolk County, New York.

## FACTS

*Ortiz and Reich's Prior Relationship*

10. Upon information and belief, Ortiz and Reich shared a close personal relationship as a result of Reich's friendship with Ortiz's then-current husband, Michael Ortiz.

11. Upon information and belief, Reich and Michael Ortiz developed a friendship as a result of their involvement with professional weight lifting and/or mixed martial arts. Michael

2

Ortiz and Reich developed, owned, opened, and operated a business together located at 339 Jackson Avenue, Syosset, New York beginning in 2008 under the name "Miami Tans."

12. Reich and Michael Ortiz further planned to open a second business relating to health and fitness at or around the same time. That business was to be called "Miami Fitness NY".

13. On or about May 1, 2009, Ortiz wrote a blog whose web address is http://melissaortiz-seo.blogspot.com/2009/05/what-has-melissa-ortiz-done-for-miami.html. In that blog, Ortiz noted, among other things, that she was appointed by Reich and Michael Ortiz as the "new Interactive E-Commerce Marketing Head Analyst and Strategist of SEO, SEM, and SMO" for their company, Miami Tans.

14. Upon information and belief, Ortiz and Reich continued to share a close friendship through all relevant and material times described herein.

*The Driven Companies*

15. Meineke grants franchises to third-parties to own and operate automotive repair centers under Meineke's federally registered trade name, logos, and marks using a standard, unique, and uniform operating system.

16. EconoLube grants franchises to third-parties to own and operate automotive repair centers under EconoLube's federally registered trade name, logos, and marks using a standard, unique, and uniform operating system.

17. The Driven Companies operate their businesses using shared support services provided by common employees located at a centralized principal place of business located in Charlotte, North Carolina.

3

18. Pursuant to this arrangement, Meineke and EconoLube identified a need in early 2012 for an employee to serve and perform duties in order to improve both companies' websites through, among other tools, search engine optimization ("SEO"). To that end, the Driven Companies created the position of Director of Interactive Media & Dealer Communications and they solicited resumes from potential candidates.

*Ortiz's Initial Misrepresentations*

19. In response to the Driven Companies' solicitation of potential candidates for the newly created position, Ortiz provided her resume to the Driven Companies in or around March 2012.

20. Ortiz's resume contained a number of representations of material facts regarding Ortiz's employment history. Those written representations were reasonably calculated by Ortiz to deceive the Driven Companies into believing that she had substantial and superior experience in the SEO field. Ortiz made those written representations with the specific intent to deceive the Driven Companies into believing that she was an expert in SEO so that the Driven Companies would hire her and place her in a position of trust within the Driven Companies. Ortiz's written representations in her resume did, in fact, deceive the Driven Companies into believing that she was an SEO expert and providing her with a position of trust within the companies.

21. In her resume, Ortiz identified a number of positions she held for prior employers and the salary paid while holding those positions. Specifically, she identified the following prior employers and positions held: On-line Media Director for CGR Creative in Charlotte, North Carolina; Global Director of E-Commerce for Henry Schein Pharmaceuticals; Vice President for Cablevision/Newsday; and Vice-President of Interactive Marketing for First Class Equities.

22. After Ortiz's employment ended, the Driven Companies first began to discover that Ortiz and Company were not as represented to them. As such, the Driven Companies began an investigation. That investigation revealed that many of Ortiz's written representations were false. Specifically, Ortiz misrepresented, at a minimum, the amount of her compensation received while employed by CGR Creative and Henry Schein Pharmaceuticals. She also misrepresented her title while employed by Cablevision/Newsday as she was employed as a manager and not a Vice President. Also, she failed to inform the Driven Companies that the President, former owner, and company for whom she allegedly served as the Vice President of Interactive Marketing were indicted and pled guilty to creating and maintaining a scheme to defraud various banks and entities for approximately $58 million in mortgage loans.

23. In her resume, Ortiz also stated that she received Masters Degrees in English and Business from the State University of New York at Stony Brook.

24. Subsequent investigation revealed, however, that Ortiz did not receive Masters Degrees in English and Business. She instead received a Masters of Arts from the State University of New York at Stony Brook.

25. In her resume, Ortiz also included information designed to induce the Driven Companies to conclude that she was an expert in the SEO industry. For example, she stated that she: authored the cover stories for the May 2009 and July 2009 issues of *Search Engine Strategies Magazine*; served as a featured speaker at the 2010 MACTECH conference; and served or was asked to serve as a key note speaker at two industry conferences.

26. Subsequent investigation revealed, however, that she did not publish cover stories for *Search Engine Strategies Magazine* nor did she serve as a feature or key note speaker at the identified industry conferences.

5

27. Prior to discovering these misrepresentations, the Driven Companies – substantially based on these misrepresentations – hired Ortiz to serve as the Director of Interactive Media & Dealer Communications for Meineke and EconoLube on or around March 19, 2012.

*Defendants' Conspiracy*

28. In the course and scope of her job duties, Ortiz was asked to identify, solicit proposals, evaluate, and select a service provider from at least three different candidates to provide SEO services for Meineke and EconoLube.

29. Rather than do as asked and hire a legitimate third-party provider of SEO services, Ortiz, together with Reich and an unknown third-party, conspired to formulate and implement a plan that would defraud the Driven Companies into selecting Defendants' fraudulent company to "provide" SEO services and paying for "services" not actually provided.

30. Defendants conspired to accomplish this fraud through a number of steps. First, Ortiz was to locate and identify a leading SEO service provider and solicit materials for Defendants' fraudulent entity to use. Ortiz would then give those materials to her outside co-conspirators - Reich and the unknown third conspirator - who would re-format those materials under their new company's name and submit those materials to the Driven Companies as their own. While Ortiz was identifying and soliciting materials for her co-conspirators to plagiarize, Reich was charged with the responsibility to establish a fraudulent company to serve as the straw company to present as the reputable third-party SEO service provider. Ortiz - through her position inside Driven Companies - would then "select" her co-conspirators' company as the outside vendor and enter a "contract" with them. Once "engaged" the straw company would provide SEO services at Ortiz's direction and under her supervision. Ortiz, Reich, and the

6

unknown third co-conspirator would then share in the proceeds received from the Driven Companies.

*Implementing the Fraud*

31. Ortiz did not identify and solicit proposals from at least three different candidates to provide SEO services for the Driven Companies as instructed.

32. Instead, Ortiz identified and contacted only one SEO provider, Bruce Clay, Inc. ("BCI"). BCI is widely recognized and regarded as one of the premier SEO service providers in the world. BCI provides, among other services, SEO and internet marketing support to global companies such as AT&T, Toyota, and eBay.

33. Ortiz contacted BCI on or about April 5, 2012 and requested that BCI prepare and forward to Ortiz a detailed proposal, including a scope of work and contract proposal for the provision of SEO services to both Meineke and EconoLube (collectively, the "Initial BCI Proposals").

34. Ortiz contacted no other potential SEO provider.

35. On or around April 10, 2012, BCI forwarded the proposal for Meineke to Ortiz.

36. After reviewing the Initial BCI Proposals submitted, Ortiz contacted BCI later in the day of April 10, 2012 and advised BCI that changes were necessary to meet the Driven Companies' needs.

37. Upon receipt of the revised and final proposals, Ortiz intended to misappropriate the revised BCI Proposals and convert them to her and her co-conspirators' use by plagiarizing the BCI Proposals and submitting those proposals to the Driven Companies under a different name.

7

38. After receiving and reviewing the Initial BCI proposals, Ortiz contacted Reich on or about April 10, 2012 to create a company through which the co-conspirators could complete the fraud.

39. On April 11, 2012, Reich, on behalf of the co-conspirators, formed Company, a New York limited liability company, for the sole purpose and intent to defraud the Driven Companies.

40. Company, Reich, and their unknown co-conspirator – who, to date, has identified himself as either "Michael Davis" or "Michael Miller" to the Driven Companies (neither of which appear to be a legitimate name) – have no legitimate and/or meaningful SEO experience. Nonetheless, Ortiz, Company, Reich, and/or their unknown co-conspirator undertook efforts to ensure that the terms "SEO Charlotte" and "TOP SEO New York based agency" are associated with Company's website.

41. At 1:48 p.m. and 3:29 p.m. EDT on April 26, 2012, and to meet Ortiz's demands, BCI forwarded the revised and final scope of work and contract proposal for the provision of SEO services to both Meineke and EconoLube (collectively, the "Revised BCI Proposals").

42. At 3:33 p.m. and 3:36 p.m. EDT on April 26, 2012, Ortiz forwarded copies of the Revised BCI Proposals from her work email account to her personal email account at melissa.strategist@gmail.com (Ortiz's "Personal Email"). Upon information and belief, she then forwarded the BCI proposals from her Personal Email to her co-conspirators.

43. At 3:38 p.m. EDT on April 26, 2012, Ortiz responded to BCI to acknowledge receipt of the Revised BCI Proposals.

44. At 3:59 p.m. EDT on April 26, 2012, Ortiz participated in a 54 minute 39 second conference call with her co-conspirators to discuss the final implementation of their fraud.

45. Prior to that conference call - and specifically on April 26, 2012 at 3:43 p.m. EDT - Ortiz forwarded a substantial majority of the Driven Companies' internal and confidential information regarding the SEO and other relevant optimization tools for their websites from her work computer to her Personal Email.

46. Within days, Reich - a full-time and professional body builder with no SEO experience - and his unknown co-conspirator had plagiarized the substantial majority of the contract and terms and conditions documents of the BCI Proposals, including those documents' identifying footers contained at the bottom of each page, and re-formatted those documents for use by Company (the "Company Contracts").

47. In an effort to provide Company with an air of legitimacy, Company and Reich also created a proposal for the provision of SEO services to EconoLube for submission to Ortiz (the "Company Proposal"). The substance of the Company Proposal was likewise plagiarized from the relevant BCI Proposals and from various public sources available on the internet, including from:

http://toughtalkradionetwork.com/become-a-thought-leader-in-your-industry/;

http://www.teleteria.com/search_engine_advertise.html; and

http://www.cameleoni.com/onlinemarketing.htm, among other locations.

48. On or about April 29, 2012 and thereafter, Company, Reich, Ortiz, and their unknown co-conspirator used and presented the Company Proposal, in addition to Company's website and Ortiz's oral representations to the Driven Companies' executives, to deceive the Driven Companies into believing that Company was a legitimately operating and leading national SEO service provider with a tremendous amount of experience in the area. In truth, none of it is or was accurate.

49. On April 30, 2012 at 12:06 a.m., the Defendants' unknown co-conspirator forwarded the plagiarized Company Contract and Company Proposal for EconoLube to Ortiz for Ortiz's review and edit.

50. Between April 29, 2012 and May 5, 2012, Ortiz reviewed and edited the Company Contract for EconoLube forwarded by Defendants' unknown co-conspirator on April 29, 2012 and provided those edits to the unknown co-conspirator and/or Reich (the "Ortiz Edits"). The Ortiz Edits are not modifications that benefit the Driven Companies, however. Rather, those edits contain changes either favorable to Company or simply stylistic in nature. As an example, the Ortiz Edits reduce the number of reports detailing Company's alleged efforts under the agreements from two per month to one.

51. On Saturday, May 5, 2012 at 9:32 p.m., Reich forwarded to Ortiz the Company Contract for EconoLube revised to incorporate the Ortiz Edits.

52. Between Saturday evening, May 5, 2012 and Sunday, May 6, 2012, Ortiz approved the revised Company Contract for EconoLube containing the Ortiz Edits and communicated that approval to Reich who, in turn, incorporated the Ortiz Edits into the plagiarized Company Contract for Meineke.

53. On Sunday, May 6, 2012 at 6:22 p.m., Reich forwarded the plagiarized Company Contracts for both of the Driven Companies revised to contain the Ortiz Edits to Ortiz for execution. In his email communication, Reich states "[p]lease see both contracts attached with your changes implemented on both . . .".

*The Payoff*

54. Immediately upon receipt, Ortiz "approved" the plagiarized Company Contracts on behalf of the Driven Companies and signed those contracts.

55. The plagiarized Company Contract for Meineke provided for a total of $485,000.00 in payments to Company over a two year period for SEO services despite the fact that no one affiliated with Company - other than Ortiz – has any experience in the SEO industry.

56. The plagiarized Company Contract for EconoLube provides for a total of $252,000.00 in payments to Company over a three year period for SEO services despite the fact that no one affiliated with Company - other than Ortiz - has any experience in the SEO industry.

57. Ortiz relied upon her position with the Driven Companies, as well as the relationship of trust and confidence between herself and the Driven Companies, to approve Company as the vendor for SEO services and their plagiarized Company Contracts. She then executed the Company Contracts on behalf of the Driven Companies on May 7, 2012.

58. On May 7, 2012, Ortiz immediately then requested that Meineke pre-pay Company the entire first year of fees due under Meineke's purported agreement with Company in the total amount of $250,000.00 despite that such a request is well outside of the industry's standard. Ortiz also requested that EconoLube pre-pay the first two months of fees under EconoLube's purported agreement with Company in the total amount of $14,000.00. At that time, the Driven Companies requested that Company provide a W-9.

59. Company provided its W-9 as requested. The tax identification number provided on the W-9, however, was the Social Security Number of a long ago deceased Texas man.

60. In response to Ortiz's request for payment to Company, the Driven Companies authorized payment of $150,000.00 from Meineke and $14,000.00 from EconoLube.

61. On May 18, 2012, Meineke issued and forwarded check number 22875 in the amount of $150,000.00 to Company.

62. On May 18, 2012, EconoLube issued and forwarded check number 59674 in the amount of $14,000.00 to Company.

*Covering Up the Fraud*

63. In an effort to conceal the fraud, Ortiz and her co-conspirators engaged in a number of activities designed to give the appearance of legitimacy to Company. Furthermore, Ortiz limited contact between Company and her co-conspirators and other employees of Driven Brands.

64. As an example, SEO services agreements with the scope of the purported Company Contracts typically include a significant amount of training and direct, in-person consultation between the service provider and the customer, as the Revised BCI Proposals included. The Company Contracts, however, exclude such training and consultation.

65. In addition, Ortiz took great lengths to ensure she was the sole point of contact between Company and the Driven Companies at all material times. To that end, she specifically instructed the Driven Companies' information technology and marketing personnel to not contact or provide typical and routine information to Company despite that such contact and information was necessary for an SEO service provider to perform typical services.

66. Ortiz also provided Company with the Driven Companies' log-in and password credentials for two third-party SEO monitoring services, Google Analytics and SEOmoz. In essence, Google Analytics and SEOmoz provide domain and website owners with certain basic analytical tools and information that permit the domain and website owner to monitor how consumers are interacting with their domains and websites. They also provide the domain and website owners with standard and customizable reports summarizing that information.

67. Despite the fact that legitimate SEO service providers traditionally provide customers with customized detailed written reports identifying the substantial amount of effort undertaken to improve and optimize a customer's domain and/or websites, Company simply printed the standardized "welcome dashboard" on the front page of Google Analytics and forwarded that "report" to Ortiz at the Driven Companies each month as evidence of their required SEO efforts. These "reports" also failed to comply with Company's obligations under the purported Company Contracts. Nonetheless, Ortiz "authorized" and caused a payment of $7,000.00 to be paid to the Company for the "work" performed for EconoLube.

68. Ortiz took this basic information available through Google Analytics and other information provided through the SEOmoz service and "summarized" it in correspondence and in meetings to the Driven Companies' presidents and other personnel as evidence of the work product provided by Company.

69. In addition, it is necessary for an SEO service provider to access the computer server that hosts the domains and/or websites to perform basic, fundamental SEO services. Neither Company nor any of its principals ever accessed the Driven Companies' servers to perform such tasks, however.

70. From the signing of the Company Contracts to date, Company failed to engage in or otherwise provide legitimate SEO services to the Driven Companies.

*Company is Unknown Co-Conspirator and Reich's alter-ego*

71. Upon information and belief, Reich is the sole member, officer, and director of Company.

13

72. At a minimum, Reich and the unknown co-conspirator are and were, at all material times, solely and wholly responsible for the operation and operational decisions, including those relating to finances, of Company.

73. Reich and the unknown co-conspirator, at a minimum, independently and wholly dominate and control Company such that Company does not enjoy an independent existence.

74. Company has and continues to fail to observe the corporate formalities required by law and observed by legitimately operating limited liability companies.

75. Company is and was used for an improper purpose and as a mere instrumentality of, at a minimum, Reich and the unknown co-conspirator as an artifice of fraud. Company's sole intent is to delay, hinder, and defraud third-parties, including the Driven Companies.

76. Company made payments to and on behalf of, at a minimum, Reich and the unknown co-conspirator despite not having received reasonably equivalent value in exchange for those transfers.

## COUNT I
## MEINEKE'S CLAIM OF CONSTRUCTIVE FRAUD AGAINST ALL DEFENDANTS

77. Meineke hereby reincorporates and re-alleges paragraphs one through 76 above as if fully set forth herein.

78. As set forth in detail above, Ortiz made numerous false representations and/or concealed material facts from Meineke regarding her professional experience and abilities in SEO.

79. As also set forth in detail above, Company and Reich made numerous false representations and/or concealed material facts from Meineke regarding their background and SEO experience and capabilities.

14

80. Defendants reasonably calculated that these false representations and/or concealed material facts would deceive Meineke into believing that Company, Reich, and their unknown co-conspirator were qualified to serve as Meineke's third-party SEO provider.

81. Defendants made these false representations and/or concealed material facts with the intent to deceive Meineke into believing that Company, Reich, and their unknown co-conspirator were qualified to serve as Meineke's third-party SEO provider and thereby gain a lucrative contract that was not reflective of the value or services such an agreement would typically provide Meineke.

82. Defendants' false representations and/or concealed material facts did, in fact, deceive Meineke and directly and proximately caused damages to Meineke.

83. Defendants also utilized Ortiz's relationship of trust and confidence with Meineke to consummate a transaction to cause damage to Meineke.

WHEREFORE, Meineke Car Care Centers, Inc. hereby prays that this Honorable Court enter a judgment against Defendants, jointly and severally, for money damages in an amount to be determined at trial, plus all allowable and taxable costs permitted by law and all such other relief as this Honorable Court deems just and proper.

## COUNT II
## ECONOLUBE'S CLAIM OF CONSTRUCTIVE FRAUD AGAINST ALL DEFENDANTS

84. EconoLube hereby reincorporates and re-alleges paragraphs one through 76 above as if fully set forth herein.

85. As set forth in detail above, Ortiz made numerous false representations and/or concealed material facts from EconoLube regarding her professional experience and abilities in SEO.

15

86. As also set forth in detail above, Company and Reich made numerous false representations and/or concealed material facts from EconoLube regarding their background and SEO experience and capabilities.

87. Defendants reasonably calculated that these false representations and/or concealed material facts would deceive EconoLube into believing that Company, Reich, and their unknown co-conspirator were qualified to serve as EconoLube's third-party SEO provider.

88. Defendants made these false representations and/or concealed material facts with the intent to deceive EconoLube into believing that Company, Reich, and their unknown co-conspirator were qualified to serve as EconoLube's third-party SEO provider and thereby gain a lucrative contract that was not reflective of the value or services such an agreement would typically provide EconoLube.

89. Defendants' false representations and/or concealed material facts did, in fact, deceive EconoLube and directly and proximately caused damages to EconoLube.

90. Defendants also utilized Ortiz's relationship of trust and confidence with EconoLube to consummate a transaction to cause damage to EconoLube.

WHEREFORE, Econo Lube N' Tune, Inc. hereby prays that this Honorable Court enter a judgment against Defendants, jointly and severally, for money damages in an amount to be determined at trial, plus all allowable and taxable costs permitted by law and all such other relief as this Honorable Court deems just and proper.

**COUNT III**
**VIOLATION OF NORTH CAROLINA'S DECEPTIVE AND UNFAIR**
**TRADE PRACTICES ACT BY MEINEKE AGAINST ALL DEFENDANTS**

91. Meineke hereby reincorporates and re-alleges paragraphs one through 76 above as if fully set forth herein.

92. Defendants' effort to defraud Meineke is an unfair and/or deceptive act or practice that is in or affects commerce as defined and prohibited by North Carolina's Deceptive and Unfair Trade Practices Act (the "Act").

93. Defendants' efforts to defraud Meineke did, in fact, directly and proximately cause damage to Meineke in an amount equal to at least $150,000.00.

94. Pursuant to the Act, Meineke's actual damages are trebled.

95. Pursuant to the Act, Meineke may be entitled to its reasonable attorneys' fees because Defendants: (i) willfully engaged in the acts and practices complained of; and (ii) unwarrantedly refused to fully resolve this matter pre-suit.

96. Meineke has engaged undersigned counsel and agreed to pay counsel a reasonable attorneys' fee for all services rendered relating to this action and otherwise in connection with enforcing its rights.

WHEREFORE, Meineke Car Care Centers, Inc. hereby prays that this Honorable Court enter a judgment against Defendants, jointly and severally, for money damages in an amount to be determined at trial and trebled pursuant to applicable statute, plus all allowable and taxable costs, including reasonable attorneys' fees per statute and as otherwise permitted by law, and all such other relief as this Honorable Court deems just and proper.

## COUNT IV
## VIOLATION OF NORTH CAROLINA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT BY ECONOLUBE AGAINST ALL DEFENDANTS

97. EconoLube hereby reincorporates and re-alleges paragraphs one through 76 above as if fully set forth herein.

98. Defendants' effort to defraud EconoLube is an unfair and/or deceptive act or practice that is in or affects commerce as defined and prohibited by the Act.

99. Defendants' efforts to defraud EconoLube did, in fact, directly and proximately cause damage to EconoLube in an amount equal to at least $21,000.00.

100. Pursuant to the Act, EconoLube's actual damages are trebled.

101. Pursuant to the Act, EconoLube may be entitled to its reasonable attorneys' fees because Defendants: (i) willfully engaged in the acts and practices complained of; and (ii) unwarrantedly refused to fully resolve this matter pre-suit.

102. EconoLube has engaged undersigned counsel and agreed to pay counsel a reasonable attorneys' fee for all services rendered relating to this action and otherwise in connection with enforcing its rights.

WHEREFORE, Econo Lube N' Tune, Inc. hereby prays that this Honorable Court enter a judgment against Defendants, jointly and severally, for money damages in an amount to be determined at trial and trebled pursuant to applicable statute, plus all allowable and taxable costs, including reasonable attorneys' fees per statute and as otherwise permitted by law, and all such other relief as this Honorable Court deems just and proper.

## COUNT V
## MEINEKE'S CLAIM FOR CIVIL CONSPIRACY AGAINST ALL DEFENDANTS

103. Meineke hereby reincorporates and re-alleges paragraphs one through 76 above as if fully set forth herein.

104. Pursuant to a common scheme, Defendants entered into an agreement to do a lawful act by actually and constructively defrauding Meineke.

105. Defendants' conduct directly and proximately caused injury in the form of money damages to Meineke.

WHEREFORE, Meineke Car Care Centers, Inc. hereby prays that this Honorable Court enter a judgment against Defendants, jointly and severally, for money damages in an amount to

18

be determined at trial, plus all allowable and taxable costs permitted by law and all such other relief as this Honorable Court deems just and proper.

## COUNT VI
## ECONOLUBE'S CLAIM FOR CIVIL CONSPIRACY AGAINST ALL DEFENDANTS

106. EconoLube hereby reincorporates and re-alleges paragraphs one through 76 above as if fully set forth herein.

107. Pursuant to a common scheme, Defendants entered into an agreement to do a lawful act by actually and constructively defrauding EconoLube.

108. Defendants' conduct directly and proximately caused injury in the form of money damages to EconoLube.

WHEREFORE, Econo Lube N' Tune, Inc. hereby prays that this Honorable Court enter a judgment against Defendants, jointly and severally, for money damages in an amount to be determined at trial, plus all allowable and taxable costs permitted by law and all such other relief as this Honorable Court deems just and proper.

This 14th day of November, 2012.

/s David Tkach
David L. Tkach, Esq.
N.C. Bar No. 34252
dtkach@tkachlaw.com
David L. Tkach, PLLC
2020 S. Tryon Street, Suite 2A
Charlotte, North Carolina 28203
P: 704-930-0300
F: 704-817-1514

Wesley S. White, Esq.
N.C. Bar No. 43916
wes@weswhitelaw.com
Law Offices of Wesley S. White
2020 S. Tryon Street, Suite 2A
Charlotte, North Carolina 28203

*Co-Counsel (Pro Hac Vice)*

Dennis D. Leone, Esq.
Florida Bar No. 069401
dleone@shankmanleone.com
Shankman Leone, P.A.
609 E. Jackson Street, Suite 100
Tampa, Florida 33602

*Attorneys for Meineke Car Care Centers, Inc. and Econo Lube N' Tune*